# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Werner Wolfgang Rümmer, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| State of North Dakota, et. al., | ) | |
| | ) | Case No. 1:12-cv-020 |
| Defendants. | ) | |

Inmates in the custody of the North Dakota Department of Corrections and Rehabilitation ("DOCR") have two accounts into which their money is deposited: (1) a spending account; and (2) a release aid account. Inmates can withdraw funds from their spending accounts to purchase approved personal items. See N.D.C.C. § 12-48-15(1). However, except as authorized by Warden, they cannot access funds in their release aid accounts until they are released. See id.; see also N.D.C.C. § 12-48-15(5) ("The warden shall pay an inmate all funds in the inmate's account, less the inmate's outstanding obligations to the penitentiary, when the inmate is released on parole or discharged from the penitentiary.").

On January 14, 2014, the plaintiff, Werner Wolfgang Rümmer ("Rümmer"), sought authorization from the Warden to withdraw funds from his release aid account in order to purchase books/reference materials he claimed were not available to him in the penitentiary's law library and that he needed in order to prepare for trial in this case. (Docket No. 66-2). The Warden denied Rümmer's request, advising him that he would have to use funds from his inmate spending account

1

to make such a purchase. (Id.).[1] The balance of Rümmer's spending and release aid accounts as of December 31, 2013, were $10.29 and $1,032.27, respectively. (Docket No. 66-3). Thus, he presumably did not enough money in his spending account in January 2014 to purchase all of the books/reference materials he wanted.

On February 3, 2014, Rümmer filed a "Motion to Release Funds from Rümmer's Inmate Account In Amount of $216.68." He claims that staff have prevented him from using money from his release aid account in order to purchase books/resource materials from an NDDOCR-approved vendor, thereby denying him access to needed legal materials. He seeks the court's authorization to withdraw money from his release aid account so that he can order the following reference materials: (1) *Represent Yourself in Court*: *How to Prepare & Try a Winning Case*, by Attorneys Paul Bergman & Sara Berman-Barrett; (2) *Writing to Win: The Legal Writer*; by Steve D. Stark; (3) *Webster's English Dictionary*; (4) *Roger's Thesaurus*; (5) *Prisoner's Self-Help Litigation Manual*, by John Boston and Daniel Manville; (6) *How to Win your Personal Injury Claim,* by Attorney Joseph Matthews; (7) *Sue the Doctor and Win! Victim's Guide to Secrets of Malpractice Lawsuits,*

---

[1]The Warden, in an affidavit filed by defendants, attests that she did not approve Rümmer's request for the following reasons:

- The statutory purpose of the Release Aid Account is so an inmate has funds available upon the inmate's release from the penitentiary to help the inmate reintegrate back into society.
- Rummer has access to a comprehensive amount of legal material through the inmate law library and the CD Rom legal research system, which is available in the inmate housing units and is kept current and includes all federal cases, statutes, and court rules, and all North Dakota cases, statutes, and court rules. Forms for post-conviction, Section 1983 cases, and Section 2254 cases, and prisoner self-help litigation guides, are also available.
- Rummer spent $173.07 in commissary and JPay during December 2013 and January 2014, which was more than enough to pay for the requested legal books.
- Rummer, who is 53 years old, has a life sentence with parole eligibility. I wanted to maintain some funds in Rummer's Release Aid Account in case he is ultimately released or for indigent burial costs if he is not.

(Docket No. 67-1).

2

by Lewis Laska; and (8) *Black's Law Dictionary*.

On February 10, 2014, defendants filed a response in opposition to Rümmer's motion. They aver that the Warden was acting in accordance with policy established in N.D.C.C. § 12-48-15(1) when denying Rümmer's request. Second, the aver that, by denying Rummer's request, the Warden was in effect educating Rümmer how to manage his finances. As an aside, they note that Rümmer had enough money in his spending account to cover the cost of his requested materials but instead chose to spend the majority of it on commissary, music, and e-stamps in December 2013 and January 2014. (Docket No. 67-1).

On February 21, 2014, Rümmer filed a reply to defendants' response to his motion. He reiterates his claims that he has been denied access to legal materials, renews his request for the release of funds from his release aid account.

The court finds Rümmer's claim that he has been denied legal materials to be specious. The Warden has not prohibited Rümmer from ordering reference materials. Rather, she has told him that he can only use money from his spending account to make such a purchase.

The matter at hand– the Warden's administration of Rümmer's release aid account–does not warrant judicial intervention. Prison administrators are accorded wide-ranging deference when it comes to the management of their facilities, see Bell v. Wolfish, 441 U.S. 520, 547 (1979), and, with respect to encumbered accounts, it is widely recognized that correctional facilities have a legitimate penological interest in requiring prisoners to set aside money for their release. See e.g., Flinkfelt v. Wall, No. 09-589, 2010 WL 786038, at *4 (D.R.I. March 3, 2010) ("To the extent plaintiff claims that the legislation requiring a portion of his wages be held in a frozen account which he may not access until his release from prison violates his rights under either substantive or procedural due

3

process, such claims fail. A prison regulation does not violate a prisoner's substantive-due-process rights unless the prisoner proves that the regulation lacks a rational relation to legitimate penological interests. However, here it is clear that the legislation requiring prisoners to set aside money for use upon their release is rationally related to a legitimate penological interest." (internal citations and quotations omitted)); Sperry v. Werholtz, 321 Fed. Appx. 775, 778 (10th Cir. 2009) (determining that regulation requiring prisoners' participation in mandatory prison savings accounts did not violate prisoner's substantive due process rights because the Kansas corrections department "retains a legitimate interest in providing [prisoner] with a source of funds upon his release to ease his transition into society"); Cook v. Lehman, 188 F.3d 512, at *1 (9th Cir.1999) (finding as frivolous prisoner's claim that legislation requiring deduction of 30 percent of prisoners' wages to fund, inter alia, mandated inmate savings accounts violated procedural due process); Peterson, 161 F.3d 13, at *1 ("'The legislative process satisfies procedural due process requirements' regarding the statute mandating a portion of inmates' wages be transferred to their personal prison savings accounts."). Rümmer's motion (Docket No. 66) is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated this 21st day of February, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

4